Morning is Freedom From Religion Foundation v. County of Lehigh, No. 17-3581. Mr. Baxter. Your Honors, may it please the Court, Eric Baxter on behalf of Appellant Lehigh County, Pennsylvania. I'd like to reserve five minutes of my time for rebuttal. Granted. Your Honors, as the Eighth Circuit Court of Appeals recognized just last week in this new Doe-Child decision, the Supreme Court's 2014 Town of Greece decision fundamentally changes the way that courts must analyze Establishment Clause claims. Well, why should we focus on Town of Greece, which is a legislative prayer case, instead of the Supreme Court's decisions in Van Orden v. Perry and McCreary County v. ACLU, which are display cases? Isn't this more of a display case than a legislative prayer case? Well, first, under either line of cases, the county should prevail. But Town of Greece, the court in all of those cases has relied equally. For example, in Lynch, the court relied on Marsh, which was the early legislative prayer case. And in all of these cases, the court treats the same cases involving a government acknowledgment of religion, whether it be by allowing legislative prayer, having chapels in government buildings and paid chaplains, recognition of religious holidays. But the court hasn't always, the high court hasn't, nor this court, hasn't always treated these expressions of religiosity the same, right? Context does matter. For example, schools, it's treated one way. Displays is treated a different way. So what's our framework here? It's Town of Greece, it's not Van Orden and McCreary County? Again, under both lines of cases, the county should prevail. But we would urge the court to apply to Town of Greece because there are four reasons why Town of Greece specifically should apply here. First, there, the court announced that it was reinstating the historic test in all Establishment Clause cases. It said the Establishment Clause must be understood in light of historic practices and understanding. It went on to say this is not an exception for legislative prayer, that any test under the Establishment Clause that is adopted must acknowledge practices that the framers accepted and that have withstood the critical test of time and political scrutiny. So we know that Town of Greece does away with that test because Kennedy specifically cited to his dissent in Allegheny where he said the endorsement test, at least to the extent the endorsement test has as its touchstone the idea that a violation occurs when non-adherents are made to feel like outsiders. He says if that is the touchstone of the endorsement test, that test is inconsistent with a historic understanding because there's a long history of historic practices that would all violate that endorsement test. And so Kennedy makes a, you know, the plaintiffs make an argument that Town of Greece doesn't overturn Lemon v. Kurtzman, which there is no explicit overturning of the case, but the Lemon test as we understand it, which developed in the context of Lynch and Allegheny, that test has, that gloss on the Lemon test has been done away with by Justice Kennedy's reliance on his Allegheny dissent and his specific decision that offense is no longer sufficient to satisfy that test. He talks there and goes on beyond the initial broad introductory statement to look at the specific practices and as Judge Hardiman was pointing out, the practices at issue in that case are in the nature of the sorts of public prayer that the court has consistently treated in a somewhat different way focusing on their impeccable historical credentials. Looking back to the time of the framers, that's not the test that the court has applied in the context of looking at passive displays, which is at least arguably what we have before us here. So it's not what the court did, it is what the court did in Lynch. The court replied to historical analysis that broadly looked at practices that were acceptable at the time of the framing, prayers that are much, or practices that are much more religious than what happened in this case, which is really just a historical recognition, not an encouragement to religion like even the so-called ceremonial deistic practices. But in Lynch the court said, we're going to uphold the Christmas display because of, and a whole list of things that included paid chaplains, chapels and buildings, recognition of religious holidays like Christmas and Thanksgiving, invocations by presidents for prayer, God save this honorable court, in God we trust, under God in the pledge. The court looked broadly at all of those factors to demonstrate that the display at issue in Lynch was no more likely to cause an establishment than any of those practices. It was only in Allegheny when the court adopted Justice O'Connor's concurrence from Lynch where this gloss of the endorsement test was laid over it, which the court applied there, it didn't apply in Van Orden, and then Justice...  Well, but the majority did not apply it, and Justice Kennedy now in town of Greece has said in all establishment clause cases you must look to this historic analysis and offense is not enough. So that there can't be the, there cannot be an offended, I'm sorry, there cannot be a non-adherence made to feel like outsider's test that when there's no, when offense is never sufficient to establish a claim. Justice Kennedy there also goes on to discuss the reasonable observer and to do an analysis of the perspective of the reasonable observer citing Justice O'Connor's concurrence in Lynch, citing Salazar, citing Santa Fe, that discussion does not suggest that those are being overruled, at least not so clearly that as a court of appeals we can say that we are going to disregard what it is, that still appears to be until the Supreme Court clearly tells us otherwise, a viable Supreme Court precedent. Isn't that right? Well, two responses. First, Justice Kennedy, Justice Kennedy clearly is trying not to be, draw an extreme line here. He acknowledges even in his Allegheny dissent, he says I wouldn't mind the endorsement test as long as it produced results that were consistent with what, with historical practices and understanding. But he says the endorsement test as it's understood, non-adherence made to feel like outsider's, does not meet that test. So he, if you, if the court wants to look through the eyes of a reasonable observer, Kennedy is saying the reasonable observer has to look at what was understood and within the historical practices and understandings. So, and then I think your applies in the Supreme Court in this court and it's extreme associates, the case, for example, said that you look to the cases that are most directly applicable. Well, even if, even if you apply Lynch and Van Orden, those both applied essentially historical analysis. And I mean, Van Orden did it, you know, Justice Breyer in that case, didn't look to the lemon test at all. Said lemon is not applicable here. And instead he looked to the text, the history and the content. Problem that Van Orden and McCreary are decided on the same day. Right. And so if we think that those are the close, most closely analogous cases on the same day and one applied lemon, one didn't, what's your argument for why we go with the one that didn't apply lemon and not the one that did? Well, again, so I, the, you mean, do you mean between, as between Van Orden and McCreary? Say it another way. I'm very interested in Judge Vivas' question and more interested in your answer. Is this case more like Van Orden or more like McCreary County and why? Okay. Well, that's, this case is definitely in line with Van Orden, not McCreary. McCreary was simply a purpose test, which Justice Breyer distinguished because of its short and stormy history involved a monument or a plaque that was set up by itself without any surrounding context. And in the, under the auspices of a ceremony, an installment ceremony where there were judges and county commissioners invoking God and the Ten Commandments as ethical principles to live by. So the difficulty we have though, is that if we go back to the 1940s, we have an article in which Harry Herzog, granted it's two years after adoption, your brief points it out, but let's bracket that, that Harry Herzog saying this cross represents Christianity and the people who are the foundation and backbone of this county. So speaking in the present tense back then, and it's, it sounds like it's endorsement of Christianity at the time. Why isn't that enough to put it in the same basket with McCreary? Well, if we're looking just at the purpose prong test under McCreary and forgetting about town of there are five reasons why there's no improper purpose here. The solicitor or the commissioners first started from a blank slate. They said that few of them had any understanding of what the seal was. They asked their county solicitor to do a thorough search. He found the Herzog article in the historical society publication where it has a statement that the cross was honoring the Christians who are the foundation backbone of our country, which at worst is ambiguous from the county's perspective, because once you, you know, whoever founded the country, they are the founders and the backbone of the, of the county for, for, in perpetuity. And so, but the statement is not that those who founded the county statement is that the, the Canary Cross signifies Christianity and the God-fearing people who are the backbone of the county. That is in the present sense, the present tense seeming to speak to the Christian population or segment of the population of the county. So there's two readings, right? So putting that, I mean, there's two reasons you can read it that way. You can also read it as the county commissioners did, that this was referring to the settlers, the foundation and the backbone. But setting that aside in context, second factor, in context of the article with 12 other symbols being recognized that all reflected important aspects of the county's history and culture, that's a very compelling indication that the purpose of everything on the seal was to recall the history and culture of the site. He also found the morning call article to the page 87 of the appendix, which said, oh, the county seal is a blend of national state and local history. Hardly anybody in the county even knows we have this, but it, it is to honor the early settlers, the Christian settlers. We don't know what year that was first published. We don't know the year of the article. What we do know is that was it incorporated, and this is the fourth point, incorporated into curriculum that several school districts adopted as part of a local history exam with a study that says here are quizzes, which didn't include the cross, but quizzes of a bunch of these elements and what they mean to the history and significance of the county. So there's no evidence here, and then the commissioner said they had a discussion with the solicitor, a wide ranging discussion, and that the conclusion they draw from that was that all of the entire seal was designed to reflect the history and culture of the county. So there's, there's no evidence in this case that the commissioners acted with any illicit purpose. Well, the only thing we have with certainty on this record seems to be the original purpose. And beyond that, some restatements that not clear quite the context or somewhere in response to but to the extent you're asking us to focus as some of our circuit precedent has not on original purpose, but on the current purpose of retaining a symbol. Don't we have a problem that unlike town of Las Cruces, for example, we don't have a record here that reflects anything about the current understanding. I mean, there, for example, there was an expert testimony about the meaning and understanding and perception of having the process on that seal. Here, you've introduced many pages of extra record material pointing us to history.com websites and other things that were may or may not be able to take judicial notice of generally, but that weren't even before the district court and therefore didn't have in terms of their reliability or their authenticity and opportunity to be challenged. So I think there's two separate issues here that I would like to address separately. First, the evidence was introduced to support the town of Greece argument where the court says you look at historical understanding. And in those cases, these are legislative facts that don't even require judicial notice, let alone a normal review by the district court. And they're also, well, an example of that is this court or the concurrence in the Bindrup decision, looking at the second amendment history, the court said, you look to legal and other sources that go back and at the time. And so the additional evidence that we've put in goes to those points. That's constitutional evidence, which requires an over-review by this court. But some of it is not valid, right? I mean, we can't take judicial notice that Newark, New Jersey means Newark of the covenant, can we? Again, judicial notice isn't required under federal rule of evidence 201. These are legislative facts. But how's that a legislative fact? Well, and if the court doesn't agree with the evidence, then it can disregard it. But in plaintiff's review, the evidence involved... It's not agreed or not. I don't know whether I can agree or not to Judge Krause's point, because I don't see a record here where the issue was joined as to whether Newark means Newark of the covenant or some town in Scotland. We don't know, right? I mean, I know the argument I'm making doesn't apply to all of your facts. Certainly, there are a lot of facts that are on the record. But to Judge Krause's point, there's a lot that's been thrown at this appellate court that was never joined before the district court. Isn't that right? It's correct that it was not introduced into the district court. But in these cases, the courts have held that even if it's not joined, these are matters that are appropriately addressed in briefing by the party. So by putting them in our briefing, giving the opposing party an opportunity to address them, that's all that's required. If you look at, for example, the Mudeau decision, and even in Lynch, the court didn't take evidence about what other historical practices were. They just looked and accepted the facts. That's a separate issue I wanted to ask you about, because my recollection of Van Orden was that that didn't come to the Supreme Court with this extensive record about what percentage of people in Austin were offended by it, or how long they had noticed it, or et cetera, et cetera. The only real facts, as I recall, maybe I'm wrong and you and Mr. Schneider can correct me, but my recollection of Van Orden is that you had some basic facts about the size of the monument, where it was located, there was a map appended to the opinion, I think Justice Breyer's separate opinion, things like that. Was there anything else about public records or opinion polls or how many people liked it or didn't like it or anything like that? No, these are strictly facts that are based on what's generally available to the courts due to the history or an understanding of it. Again, legislative facts are available to anyone to look and see what happened. But here we have the original source, the commissioner's, the designer's statement as to the original purpose. We have that in black and white. I understood your argument to be we should be looking at contemporary purpose and that is the purpose of retaining it. And if that's where you're focused, what do we have to understand that other than statements in response to litigation and now arguments, materials that you've put in front of that are local newspaper articles, history.com website, where you're trying to, as I understand it, argue about the current perceptions of a reasonable observer, with that as the material you're suggesting are legislative facts? Just to be clear, the history we put in of other seals was introduced for the purpose of showing that there is a historical practice and understanding under Town of Greece, where the court said once you have a historical practice or understanding that goes back to the founding, that pretty much solves the case, except in extreme cases. The evidence we put in for under the purpose prior material is evidence that was introduced in the district court. It's the evidence of what, you know, the facts that I mentioned, what the solicitor found when the county asked him to go and look. And this court has said in... So that's not just the letter that they sent back pending litigation and not just the commissioner's statement, it's also the morning call article predates the litigation and the school curriculum predates it and they're in the record? They're in the record, they predate the litigation. And there's deposition testimony from the plaintiffs? And there's deposition testimony from, there's definitely definition testimony from the county of what they did, which shows, and there's also definition testimony, for example, from the plaintiffs that they, you know, one plaintiff, Barry, said he'd lived in the county for 23 years, saw the seal on a regular basis every other month or so, and on all the vehicles that service to the building where he works. And in all those years, he never knew about the seal until the lawsuit was filed. And from the reasonable person perspective, at least two plaintiffs, when they were told what the, about the cross on the seal, they immediately thought of the Moravians, one of them, and then Plaintiff Winkler thought of the Pennsylvania Dutch. So which goes to show that it was, I mean, this goes to several issues, but if we're talking about purpose, there's clear evidence, the court gives deference to the legislatures and in free thought in Madrovich, the court said, we give deference once they've articulated the legitimate secular purpose, we will accept that unless the plaintiff can show that there's a sham. And we look at the present evidence, not the past evidence. The question is, if you only have... Do free thought and Madrovich still have any currency in light of Van Orden? They were both decided shortly before Van Orden. Well, both cases really anticipated Van Orden. They said, you know, we're... But they didn't in this way. They didn't apply history and tradition independent of the Lemon Test, right? As I recall, there was a lot of discussion in free thought in Madrovich about Lemon and endorsement, right? And they, the court spoke in terms of Lemon and the endorsement test, but it said, just like in Van Orden, it said, we're going to look at context. It said the Ten Commandments are religious. They have not lost their religious meaning over time, unlike, God save this honorable court. They, that was, I think that was the example the court used. It's a religious text. It's been around for a long time. And in the surrounding context, nobody is going to think that this is an effort to impose Christianity. And that's the exact same thing that Van Orden said. So if you're looking at the purpose, I just want to emphasize that there's almost no... I can't think of courts in context like this that have found an city of Zion case. The King case that this court relied upon in free thought, which was a seal with a Bible and a sword. In all of those cases, the court said the fact that the county wanted something to identify its property was a sufficient purpose that gets past the purpose prompt. When it comes to seals that have crosses on them, except for the city of Austin and in Las Cruces, every other seal in this nature has been struck down as under lemon endorsement. Some variants of those. You've asked us to consider the town of Greece and the focus on historical understandings from Justice Kennedy's writing. But Justice Kennedy in Allegheny made the comparison to a situation of having a large cross erected behind the courthouse. That's exactly what we have on this seal. And he then did a citation to the Tenth Circuit en banc decision in Freedmen, where the Tenth Circuit struck down a seal with a cross that had the prominence and centrality that's in many ways similar to the cross here. Why doesn't all of that indicate that even applying the historical test that which Justice Kennedy would endorse, that the result the Tenth Circuit reached in Freedmen should be persuasive to us here? So Justice Kennedy, and this is an excellent question, Justice Kennedy's example basically said coercion has to be the touchstone. That's always direct coercion. He says sometimes in extreme cases that can be indirect coercion where there's a symbolic use of religion, for example. And he says in a CF citation, he gives a nod to things like a cross on top of a Capitol building and goes on to say these have to be extremely unusually rare cases where there's an extreme use of religious speech such that an establishment is actually threatened. So if you think about what an extreme inherently means, that it's rare. The cross example is a cross that's all alone. There's not a pattern or a history of crosses on top of our government buildings. And there's no surrounding context that would tell you that there's some other meaning for this. And the site to Freedmen or Bernalillo County, in that case, was a seal with sun rays coming out of it overlooking a flock of sheep that says or with this we conquer. Again, no surrounding context, no history that would suggest that this was anything other than what Justice Kennedy referred to as an effort to proselytize. That's a stark contrast with what we have here, where the undisputed evidence is that there's a seal that's immediately surrounded with a cross on it, immediately surrounded by 12 or 13 other images that all reflect the history and culture of the county. That's even a stronger case than Van Orden, where you had a text which the court said is religious, is not just a religious invocation, but a command to do religious things. And the context the court looked at was 17 acres and said over 17 acres, there are other monuments that would allow the reasonable observer, even though you can't see it from this monument. And then the fact that this has been 40 years is the decisive issue that this is for 40 years has existed without controversy. So in the same context, that is the case that applies here. It's not just the presence of other symbols, what the court has looked at is the prominence of the sectarian symbol and the nature of that sectarian symbol in relation to the others. And so in Allegheny, for example, where there was the site for the craft was the central site in the courthouse. It's surrounded by poinsettias. The court looked to that as in fact highlighting the centrality of it and feeding into what the Corrales concluded was a violation. Here, when we look at the prominence, the size, the centrality, why isn't the message that comes from this seal that all of these other aspects of life in the county are focused on the centrality of the cross signifying Christianity? So I think two responses, and again going to Justice Kennedy's example, he would have upheld the crash because of all the context that surrounded it as opposed to the cross on top of the building because he said in context people would have understood. As far as prominence, this court, for example, in the Schindler II case said we're not going to get caught up in the measuring the different sizes of the elements of the Christmas display. That's not dispositive. What's more important is does this actually have the effect of leading to an establishment? And again, Justice Kennedy saying it trivializes constitutional adjudication of these issues to suggest that it's up to judges to pull out a tape measure and decide which element is the biggest. In the context of the seal, it's immediately surrounded by reminders of the history and culture of the county, which overwhelmingly suggests that that's the purpose of the entire seal. And so for those reasons, because the seal is in the context of historical practice, without any controversy and is consistent with historical practices and understandings, we would ask the court to reverse the district. All right. Thank you, Mr. Baxter. We'll hear from Mr. Schneider now. Mr. Schneider, could I ask you to begin as I did, Mr. Baxter? I assume you disagree that this is a Greece case, but it seems to be pretty close to a Van Orden or a McCreery case. And do you agree with that? And if not, tell us why. And if you do, tell us whether it's more like McCreery or more like Van Orden. One of them comes out your way and the other comes out the other way. Sure. And may it please the court, Mark Schneider on behalf of the plaintiffs appellees. First, I guess on the question of McCreery and Van Orden, I think it's not necessarily the case that those cases are at odds with one another. I think I would say this case is more like McCreery on the purpose side. Van Orden didn't really consider purpose. And it's more like Lynch in the prior Lemon cases than it is Van Orden, because it's not what Justice Breyer described in his controlling concurrence as a borderline case. So I guess I'll take the Van Orden case in two parts. First, to factually distinguish it. And second would be to note that even if Van Orden has some influence on what the court does in this case, this court's application of Lemon in prior cases sufficiently addresses the concerns and the factors that Justice Breyer looked to in Van Orden. But factually distinguishing the cases first, Van Orden involved a privately donated Ten Commandments monument set in a museum-like setting on Capitol grounds. This case involves a Latin cross, a government-adopted seal, and the presence of that seal ubiquitously throughout the community. So it was important to Justice Breyer that the display at issue in Van Orden was a Ten Commandments monument. He specifically noted that the Ten Commandments has a dual history of sorts in our country as a secular symbol as well as a religious symbol. There's no such history of the Latin cross having any sort of dual history. In addition to the specific characteristics of the Ten Commandments monument, Justice Breyer found that the context and setting of the monument in Van Orden was, again, sort of a borderline case. It was a tough call. And here we have the symbol of the county, which makes it much more readily understood to be a message that the county is seeking to convey to people that view the display. So Justice Breyer's focus on the risk of hostility in Van Orden is not really implicated in a case as egregious as this case in terms of the Establishment Clause violation. How do you say it's so egregious when 70 years without complaint? That seems inconsistent with your clients in this case. Is it egregious that it made them think of the Moravians or the Pennsylvania Dutch? That seems to play right into the hands of Mr. Baxter's argument that this is not some sort of uniquely powerful representation of a county's religiosity, but rather a recognition of one religion's influence and impact in the history of that county. Well, I think the features of this display that make it an egregious case are that it involves the Latin cross, which consistently by appellate courts has been treated as a singularly Christian symbol, as a representation of the crucifixion and resurrection of Jesus Christ. Recently, the Fourth Circuit in the Bladensburg cross case, American Humanist Association versus Maryland Parks Commission, confronted the issue of the cross and collected cases from around the country, the various appellate courts. That was a freestanding cross though. It was. It's not surrounded by any of the trappings we see on this seal. Sure. Just to get back to your Honor's question. So I want to make sure I touch upon the reference to the plaintiff's testimony because I think it's quite inaccurate with respect to Plaintiff Berry. This is page 223 of the appendix and I don't want to take up the court's time reading a lengthy transcript, but the bottom line is Mr. Berry was asked if he, at some point after this dispute arose, came to understand that the county had asserted a position as to what the cross on and he went on to say, yes, I came to understand that. Something to do with the history, which I think is kind of bogus because he said, I understand the Moravians were a religion of religious tolerance and I don't think this is in any way something that the Moravians would support. So I think it's a mischaracterization to suggest that Mr. Berry, a long time resident of the county, had concluded that this was a benign display up until the point of this case. I think Winkler and Mahalik specifically say that their understanding was to honor the Christians who settled in the Lehigh Valley. So your plaintiffs have slightly different theories on this, but some of them are consistent with what Mr. Baxter is saying. I think Plaintiff Winkler speculated about what she saw when she, she's a more recent resident of the county, and she speculated about the conclusion she drew as to what the display meant. But in addition to the fact that it involves the Latin cross, we have a history and context here. And this gets back to sort of the Lemon application. And again, we believe the Lemon endorsement, this court's Lemon endorsement framework applies. The history and context here involves a widely displayed seal. The seal, the cross on the seal is the most prominent feature. And significantly, we have the designer of the seal making public comment about the purpose for including the cross on the seal. We're not divining, we're not attempting to divine the intent of the designer. We have, that is part of the history. That, look at Freethought and Modrovich, okay? In Freethought, we have a ceremony in 1920, it's been donated by a Protestant organization, we have a judge standing up saying, you better obey the Sabbath laws or else you're going to face damnation. I mean, that's more sectarian than what we have here. So if we're going to impugn, you want to impugn things based on the earlier purpose. But Freethought and Modrovich tells pretty strongly, to the extent they're still the law, that we're supposed to be looking mostly at what the purpose is today and what was back then can inform that. But that's, I think that's what Judge Cross's question was driving at. Not that the article on its own makes it sectarian, but how does today's purpose cast, is it informed by what we know from back then? And what we knew from those two cases was pretty sectarian back then. But it seems to have over time acquired this historical patina, and so now we're in historical preservation land. It doesn't look the same as if we were in 1944 in Lehigh County or 1920 for the Chester County Courthouse in those cases. Well, with respect to the modern purpose, I mean, I'd say two things. One, the district court, consistent with what the Seventh Circuit has said in the seal cases, the dual seal cases that it handled in the city of Zion case, that even the county's stated modern contemporary, present-day purpose of honoring the Christian settlers, even if for a moment we accept that as a non-sham reason for maintaining the seal, that still violates the Establishment Clause. The problem is what is used to reference, allegedly reference, the settlers of the community is a blatantly sectarian symbol that has no real connection to the settlers. I mean, again, the commandment's plaque, as Justice Breyer mentioned in Van Orden, has a dual history of secular connection to lawmaking in our country. It's got text. Thou shalt have no other gods before me. That seems like it's much more blatantly religious. I mean, the cross is a religious symbol. You can't hide, and I don't understand the hells we're running away from it, but we got text there that appears to be religious instruction from on high. That's has this dual purpose, but one of them is very openly religious. I would agree with you, Your Honor. However, the Supreme Court has come down on that differently, noting specifically that the Ten Commandments has this dual history. The Fourth Circuit in the Bladensburg Cross case I referenced recently, that was decided last fall, said the same thing. Contrasted the Latin cross, albeit a standalone cross, but the Latin cross as a symbol with the similar to my opponent referenced in his argument, in saying that the Latin cross is a purely secular symbol that has no connection to our country's history of any kind. Purely sectarian. But there are a lot of purely sectarian symbols that are historic, right? The flag of the Virgin Islands? Your Honor, I can't say I'm specifically familiar with the Virgin Islands flag. Well, it's in the briefing. How about the names of the Virgin Islands? St. John, St. Thomas, St. Croix. That's rather sectarian, right? Well, the names, Your Honor? Yeah. Sure. I think... So if I'm someone who is opposed to government entanglement with religion, and I live on any of the Virgin Islands, I'm going to be pretty upset every time I post a letter, right? Because I've got to write things like Christianstead, St. Croix. I mean, that's going to really offend me and bother me if I think that religion should be extirpated from public life, right? Well, I mean, Lemmon tells us that these cases turn on their facts. There is no unique history in this case that I would imagine is present in cases like Las Cruces, like Judge Crouse mentioned, where there is a unique history connecting that name in Las Cruces to the symbol and the examples Your Honor is giving to the name of the city. We don't have that here. There's no unique history here to suggest... But why isn't it the case that when we consider our own precedent, and we consider Justice Breyer's controlling concurrence in Van Norden, that what we're really looking at in considering things like whether there has been any objection over the course of the past many decades, that we're looking at an evolution of the meaning or significance from whatever its original even stated purpose was. And that can be what tilts the scale from something that would violate Lemmon or an endorsement test or an indirect coercion sort of test to the other side of the scale, where we have instead something that has taken on, like Las Cruces or the city of Austin, historical meaning for that particular county. Sure. Well, I guess first, there isn't evidence in this record to suggest that that has happened here. It's just been counsel's arguments. But to respond to the question, this is a meaningfully different case because this seal has not remained on the wall of a courthouse for 82 years. This seal has been displayed more widely over the years. So one of the key elements in the to celebrate the plaque over the years. This is different than that because this seal is being displayed widely throughout the community now. It's on vehicles that obviously did not exist when the seal was adopted. It's on the website. And so getting back to Judge Krause's reference to Justice Kennedy's concurrence in Allegheny and the reference to the extreme case of the Latin cross on City Hall, that really is exactly what we have here. And in fact, the shadow cast by this seal is much larger than the shadow cast by a single cross on City Hall. Being on the county website, this... Tell them we're busy.  You're doing quite well. I've only been here 10 years, but I've never had this happen before. Don't worry about the clock. The caller is not going to eat into your time. Yeah, can you turn off your speakers entirely? All right. Okay. So earlier you referred to the... I'm going to ask Ms. Fidler to put that eight minutes on the clock. I mean, go to eight minutes, up to eight minutes. Counsel, so you referred earlier to the not a sham test, which the Supreme Court's instructed us to look at here. Even if there's a religious purpose, as long as there's a secular purpose, it's not a sham, low bar. You won on summary judgment here. How is it that you can say as a matter of law, based on this record, that any secular purpose here, historical purpose, settlers in light of the whole seal and all the other things there, that everything else is just a sham? Well, it's precisely because of the testimony given by the county in this case. I mean, it's a pretty unique record. In deposition with the county representative, the question was asked, what documents has the county relied upon in formulating the opinion, different from what's stated in Mr. Herzog's article, that the purpose of this Latin cross is to represent the Christian settlers of the community? Testimony was, the only document was Mr. Herzog's comments. That wasn't the testimony. That was the primary thing, but there was reference to the Lehigh County, the school curriculum and the call article that was in that binder. Your Honor, it's pages 263 to 269 of the appendix where this topic is covered with the corporate representative for the county. And repeatedly, he affirmed that the only, again, this is his testimony, counsel has made arguments introducing these other documents as factors in the case. Those documents were not pointed to in the summary judgment briefings before the district court. So, it's the unique testimony of the county here, citing a historic document that says something different than the position being taken today that leads us to make the sham argument. Okay, but I'm looking at appendix, you cited a page range and page 264 to 65 have references to the Lehigh County activities notebook that included in the Lehigh, presumes the Lehigh County Historical Society, but Lehigh County activities netbook included the app 87 newspaper article. Yes, I presented, excuse me, I presented those documents to confirm that the testimony on the record was the only document relied upon by the county was Mr. Herzog's statement. Can you point me to that? Where is that? It says it's the only one that was relied on. I see the primary one relied on was the historical article. There's one document that stands out, page 263, but then there's discussion of the historical activities notebook after that. Sir, your honor, if you look at appendix 267, question, okay, that's fair. You're at line eight, right? Yes, I'm sorry, line eight. So can you tell me other than exhibit nine, this is Mr. Herzog's statements, were there any other sources of information that the board relied upon in processing the information in that way in reaching the conclusion that was conveyed in the letter that was ultimately sent? As far as documents, written documents, no. So the preceding reference to those other documents was specifically to confirm the So that's what's led us to present a sham argument. Understandably, there's some degree of deference given to the government in their stated purpose, present day purpose, but where the document referred to to support that argument says something entirely different, we think that that presents a sham case. I thought Judge Krause's argument was that the meanings of these things evolve over time, and your argument seems to be if the current meaning doesn't mirror the must be a sham, and that seems to be inconsistent with our understanding that we have to look now through the lens of history, and that the historical understanding can be different. I'm referring only to consideration of the present day purpose, and the problem with the present day purpose, the county... You're arguing the present day purpose is exclusively religious? Yes, first we're arguing even if accepted as a non-sham reason, the present day purpose is religious, because it uses a blatantly sectarian symbol. There is nothing to suggest in the record. Well, that gets back to whether the seal is strictly Christian, or partly Christian, and partly historical, right? And your argument, as I understand it, is the cross is so prominent, it's a central figure, that the other things around it don't matter? They certainly don't overwhelm the meaning of the cross, and again, the fact that this is on a seal is important in considering that meaning. As the 7th and 10th circuits have held in the seal cases that they addressed, the government seal has a unique way of linking the government with any message conveyed by the seal. It's a year-round display, and this was sort of what was the undergirding of Justice Kennedy's concurrence in Allegheny, where he talked about the Latin cross on City Hall, was the year-long presence of the symbol, and so that cuts against any argument that this cross has somehow lost meaning over the years because of its prominence and the connection between the government and the meaning. The Supreme Court has also recognized that in the holidays, that they then can speak to a broader theme on their holidays. Here, given the other symbols, why not a broader theme of history? These things are all part of the history of our county. Right, and that again gets back to the problem of there being a lack of anything in the record to support that meaning. The cross stands alone as a religious symbol, and that is what Commissioner Herzog says he intended it to be. It doesn't fit with the theme as described by him. The reasonable observer looking at the seal doesn't see it as part of the theme because it's a purely sectarian symbol. It all depends on what you're focusing on here, because my colleague was talking about Van Orden, the Ten Commandments, in the light of 17 acres of other displays, but in Lynch and Donnelly, you have the poinsettias, you have Rudolph, you have Santa Claus. Here, we've got bison. They're not objects of worship. We have cement factories. We have the Liberty Bell. That's a historical thing that happened during the Revolutionary War. I don't see how you can say it's exclusively one thing or the other. It's surrounded by all these others. You've got a point. It's the largest one, and it's in the center, and those are good points, but that doesn't make it the same as the exclusive cross that's directly over the doorway of the courthouse, and there's nothing else there. It's a more complicated contextual analysis like the one the court did in Lynch versus Donnelly. Well, in the Seventh Circuit, the closest of the few seal cases that there are is the City of Zion case, and the Seventh Circuit dealt with, and I'd say it's most similar because there was an original purpose that was problematic there, despite a modern, present-day purpose at the time, sort of recasting that purpose in addressing the issue of whether the cross had been secularized. This cross was less prominent than the cross here. The Seventh Circuit said that with such explicit religious design behind the seal's original adoption in 1902, something more than a perfunctory appeal to history is required to legitimize the underlying purpose of the particular seal. The argument proceeded that the seal represented a unique religious history in the City of Zion. The record doesn't support a unique history in this case, but the Seventh Circuit, despite that history, said, nevertheless, despite that history, the city may not honor its history by retaining a blatantly sectarian seal. These symbols transcend mere commemoration and effectively endorse or promote the Christian faith. So, I go back to the cross not having any connection to the settlers of Lehigh County. Conestoga Wagon might better represent settlers. The settlers were probably a lot of things, maybe among them Christian, but if the county's goal is to commemorate the settlers of Lehigh County, which there's nothing in the record until now to suggest was the goal, but if that is the goal, the county does not have to use a blatantly sectarian symbol to do so. So, what if we were using a coercion test? What if we were using a test that was focused exclusively on history and that, as your colleague has argued, now applies after the time of grace? Again, I would go back to Justice Kennedy's concurrence in Allegheny that the example of the cross on Town Hall was used in a coercion context. And so, it is clear that there could be coercion. The coercion doesn't require forcing someone to recite a prayer or funding of a church. Coercion can be a more passive form of coercion. In this case, we have this seal featuring the Latin cross throughout the county on key government buildings, the government center, the courthouse, the public meeting room in the government center, the county flag. All right. So, Lee v. Spiceman and some other cases find coercion in the school context. Can you cite any non-school cases that find coercion based on symbols? No Supreme Court majority opinions, Your Honor, but I would refer to Justice Kennedy's concurrence in Allegheny. Any circuits that have found coercion based on a seal, a flag, a symbol, something like that? I'm not talking about Barnett Fair type cases. No, Your Honor, but there's a reason why. And that is that appellate courts have consistently used the Lemon Framework for addressing Latin cross. But that's an alternative that would be coercion. Right. Because the Lemon Framework, as this court understands it, and as other appellate courts understand it, doesn't feature a coercion analysis. And every case that's confronted a seal has used Lemon. And consistently, courts confronting Latin cross cases have used Lemon. That includes cases after the town of Greece, the Fourth Circuit Bladesburg cross case, the Second Circuit American Atheist case involving the 9-11 cross. So, with that in mind, I think that is why there's an absence of that. I think the appropriate test is Lemon endorsement. And we feature in this case a Latin cross on a government seal with a compelling original purpose to suggest a desire to promote Christianity. This case doesn't implicate whatever uncertainty reasonable minds might find to exist on the fringes of the Establishment Clause jurisprudence. This is a pretty cut and dry case. This is the extreme case as highlighted by Justice Kennedy. And the Establishment Clause protects against this sectarian endorsement. It protects the rights of all members of a community to be equal members of that community. Lehigh County has effectively held itself out as a Christian community for 74 years now. And each year that that continues actually enhances the message of Christian endorsement. And so, because this seal presents a message of exclusion by promoting only one religion, the Christian religion, we would ask that the court affirm the district court and enjoin the continued use of the seal. Thank you, Mr. Schneider. We'll hear Mr. Baxter's rebuttal. Inspector, could you start out addressing the issue that's prominent in your adversary's argument on the ubiquity of the symbol here? That this makes it arguably different than a passive monument, an immobile display, that as the 10th Circuit was describing, that this is everywhere part of the life of the citizens because it's showing up on vehicles, on of the county in a way that's different than a unitary and immobile display. So, in Weinbaum, in the 10th Circuit, the court said exactly the opposite. The fact that the seal was being used to mark all government property reinforced the idea that there was no purpose except to identify government property. And so, you have in Murray, in Weinbaum, in King, all of those cases, the court saying the use of the seal for legitimate purposes does nothing to highlight the religious element of it. It just highlights the seal itself. And so, when counsel talks about there's been effort to highlight or whatever, there's been no effort to celebrate or highlight the cross on the seal, especially. There's really not even been any effort to highlight the seal itself, but you have to look at the seal as a whole. You have to look at whether the county's made any effort to highlight the cross itself, which there's no evidence of that in the record. I'd like to hit the points on sham where, first of all, it's a very high bar. This court has never held on facts like this, that there is an improper purpose. And if you look at a free thought in Madrovich, the facts were much more egregious there, where you had the plaques were explicitly provided to the counties for purposes of introduction of religious principles, one by a missionary society, one by the Religious Education Council. And you had in Madrovich, for example, a judge who told the defendant, go out and read the Ten Commandments and follow them. You had a commissioner who had said, these are principles that we all agree on. In neither of those cases did the court disregard the later purpose of the county to preserve the history. So that's another way of saying the proper question isn't to ask whether at the time the display was put up, it was constitutional, but rather whether the decision not to take it down is unconstitutional. That's what this court said in free thought. And here, unless they can show a sham, which is their burden, the court has never found sham without affirmative evidence by the plaintiffs. And here, for example, the existence of the article in the newspaper, the existence of the curriculum showing that other people before the county had even raised this issue were seeing this as a historical item, shows that it was not a sham for the county to adopt something. I'd like to also, the Osborne testimony, Osborne was specifically asked, did you see any other documents? Then he goes on to say, we had a wide ranging conversation. We had our counsel, Sorrentino came in, he talked about everything he'd found in his search, and that is what we relied upon. You're referring to the executive session? Sorrentino is the solicitor who did the search and who produced the documents that he relied upon, which are those in the record at 80 through 87. And those, so there's clear testimony here that the county acted reasonably to search the history and try to understand what the seal was, there's no conflicting evidence. What do you hear about its current understanding besides a single newspaper article that's been incorporated into the school curriculum? Well, the historical society statement itself lists all of these 13 items clearly in the context of saying these are all things that are important to our history and culture. And so it was perfectly reasonable for the newspaper, for the school districts, and for the county to make that same conclusion. And as far as this being an overtly sectarian symbol, that's inconsistent with Free Thought, which recognized the Ten Commandments were explicitly religious, with Van Orden, which recognized the same. And it doesn't mean it's not sectarian, it means it's sectarian but allowed. That's correct. And really, and this is true under both Town of Greece and Van Orden, but the point is here that the government has some freedom to decide how it's going to speak about its history. This is not even a case where the government is saying, inviting people to celebrate Christmas or to engage in a day of prayer, they're just saying, here's a historical statement. So you look at the cross in the Second Circuit. That was a cross, the 9-11 cross, the government said, even though it applied lemon, it said under historical understanding, recognizing history, which you can't do. The court explicitly said you can't recognize history without invoking religion because religion is part of history and culture. And so it's OK to have symbols that are religious, to recognize people who are religious, to honor the contributions they've made to society without violating the Establishment Clause. And the government speech, the government is protected within a certain realm to make those decisions. It doesn't have to use a least sectarian standard, which is the language Kennedy uses in his Allegheny dissent. There's no least sectarian standard. And finally, just that there's no unique history in this case. There is a history set forth that the county relied upon the settlers who came to Pennsylvania as religious communities seeking religious freedom. And so for those reasons, and because the seal has existed for 70 years without controversy and is clearly in historical context, we would ask this court to reverse the district court's ruling. All right. Thank you, Mr. Baxter. Thank you, Mr. Schneider. The court appreciates the argument. We apologize for the interruption. Very impressive command of the case law by both advocates. So you've been very helpful to the court. We'll take the matter.